UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

JOSEPH A. BALISTRIERI,

        Plaintiff,

        v.                                    Case No. 04-C-0989

EXPRESS DRUG SCREENING, LLC,
UNION PACIFIC RAILROAD COMPANY,

        Defendants,

and

AMERICAN FAMILY MUTUAL INSURANCE
COMPANY,

        Intervenor.

---

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT DISMISSAL OF AMERICAN FAMILY MUTUAL INSURANCE COMPANY**

Plaintiff, Joseph Balistrieri, instituted this case on October 12, 2004, alleging 1) various acts of negligence by defendants Union Pacific Railroad Company (UPR) and Express Drug Screening LLC (EDS); 2) violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et. seq., by UPR; 3) vicarious liability of UPR for EDS's negligent conduct; 4) breach of a duty to conduct drug testing in a just and competent manner; and 5) wrongful discharge by UPR. Balistrieri amended his complaint, with the permission of the court, on June 7, 2006.

On March 31, 2006, American Family Mutual Insurance Company (American Family) filed an intervenor complaint asking to be relieved of any duty to indemnify or defend

its insured, EDS. At a hearing held on April 6, 2006, the court granted American Family's oral motion to intervene in this case. On June 16, 2006, intervenor, American Family Mutual Insurance Company, filed the motion for summary judgment which is pending before the court. The parties failed to file a brief in opposition to the motion for summary judgment or a response to the proposed findings of fact submitted by American Family.

## Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the nonmoving party's cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The mere existence of some factual dispute does not defeat a summary judgment motion; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. Therefore, summary judgment is appropriate against a party who, after adequate time for discovery and in the face of a properly supported summary judgment motion, fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

To establish that a question of fact is "genuine," the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the opposing party's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. A "metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587. "A district judge faced with [a summary judgment] motion must decide . . . whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572-73 (7th Cir. 1989) (citations omitted).

Finally, Civil Local Rule 56.2(e) states that "[i]n deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out."

**Undisputed Facts[1]**

Joseph A. Balistrieri is an adult resident of the state of Wisconsin, residing in Waukesha County. (First Am. Compl. ¶ 1.) UPR is a corporation with its principal place of

---

[1] Because the parties failed to respond to American Family's motion for summary judgment, the court considers the facts as stated in the proposed findings of fact and movant's brief in support of its motion as undisputed.

3

business located in Omaha, Nebraska. (First Am. Compl. ¶ 2.) EDS is a Wisconsin limited liability company with its principal place of business located in Wauwatosa, Wisconsin. (First Am. Compl. ¶ 4.) American Family is a Wisconsin insurance company having a home office at 6000 American Parkway, Madison, Wisconsin. (Intervenor Compl. ¶ 1.)

Balistrieri sued UPR and EDS on October 12, 2004. He filed an amended complaint on June 7, 2005, charging that UPR violated his rights under the Americans with Disabilities Act of 1990. (First Am. Compl. ¶¶ 3, 39.) Balistrieri alleges that EDS negligently conducted drug and alcohol tests on Balistrieri on July 26, 2003. (First Am. Compl. ¶¶ 14, 16, 48-49.) He further claims to have lost employment benefits and to have sustained physical and emotional illness as a result of EDS's conduct. (First Am. Compl. ¶ 50.)

American Family issued Business owners Package (Business policy) policy no. 48-XA6814-02 to EDS. (Booth Aff. ¶ 2, Ex. A.) This policy was in full force and effect for EDS on July 26, 2003. (Booth Aff., Ex. A.) On the same date, American Family issued Commercial Blanket Excess Liability (Excess policy) policy no. 48-XA6814-03 to EDS and the policy was in full force and effect at that time. (Booth Aff. ¶ 3, Ex. B.) These policies set forth the coverages and the limits on liability on July 26, 2003. (Booth Aff., Exs. A & B.) In addition, the policies include declarations, insuring agreements, terms, conditions, limitations and exclusions, as well as all applicable endorsements. (*Id.*)

The Business policy includes the following coverage limitation:

1. Insuring Agreement . . .
   c. The **bodily injury** or **property damage** must arise from an **occurrence** during the policy period and in the **coverage territory**.

(Booth Aff., Ex. A, policy page 9 of 18 (emphasis in original).) The Excess policy includes a similar provision, which states:

> 1. Insuring Agreement . . .
>     b. It agrees that:
>         (4) The **bodily injury** or **property damage** must be caused by an **occurrence.**

(Booth Aff., Ex. B, policy page 1 of 10 (emphasis in original).)

The Business policy has a definitions section which defines bodily injury as "bodily harm, sickness, or disease sustained by a person, including death resulting from any of these at any time." (Booth Aff., Ex. A, policy page 15 of 18.) It defines the word occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Booth Aff., Ex. A, policy page 16 of 18.)

The Excess policy includes a similar definitions section. It defines bodily injury as "bodily injury, sickness, or disease sustained by a natural person. This includes death, shock, fright, mental anguish, mental injury, or disability which results from any of these at any time." (Booth Aff., Ex. B, policy page 8 of 10.) An occurrence with respect to bodily injury and property damage is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Booth Aff., Ex. B, policy page 9 of 10.) The Excess policy goes on to define the term "your work" as used in the professional liability endorsement. It states:

> **Your work** means:
>     a. Work or operations performed by **you** or on **your** behalf; and
>     b. Materials, parts or equipment furnished in connection with such work or operations.
> **Your work** includes:

5

Case 2:04-cv-00989-CNC   Filed 08/31/07   Page 5 of 14   Document 101

> a. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**;
> b. The providing of or failure to provide warnings or instructions.

(Booth Aff., Ex. B, policy page 10 of 10 (emphasis in original).)

The Business policy includes an exclusion relating to employment practices which states:

> f. EMPLOYMENT PRACTICES. **We** will not pay for **bodily injury** for which the insured may be held liable as an employer or in any other capacity, or because of any obligation to share damages with or to repay someone else who must pay damages because of injury arising out of any:
> (1) refusal to employ;
> (2) termination of employment;
> (3) coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or
> (4) consequential **bodily injury** as a result of (1), (2) or (3) above.

(Booth Aff., Ex. A, policy page 10 of 18 (emphasis in original).) The Excess policy includes a similar exclusion which states:

> This insurance does not apply to:
> ***
> g. **Bodily injury** arising out of any:
> (1) Refusal to employ;
> (2) Termination of employment;
> (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

>> (4) consequential **bodily injury** as a
>> result of (1) through (3) above.

(Booth Aff., Ex. B, policy pages 1-2 of 10 (bold in original).)

The Business policy also includes an exclusion relating to damages arising out of rendering professional services. This exclusion states:

> j. PROFESSIONAL LIABILITY. **We** will not pay for damages due to **bodily injury** or **property damage** arising out of the rendering of or the failure to render professional services by any **insured**, who is a(n):
> \*\*\*
>> (4) nurse or x-ray or medical technician;
>> (5) health care practitioner of any kind;
>> \*\*\*
>> (14) counselor or consultant . . .

(Booth Aff., Ex. A, policy pages 10-11 of 18 (bold in original.)) The Excess policy includes a similar endorsement which states:

> This endorsement modifies insurance provided under the COMMERCIAL BLANKET EXCESS LIABILITY POLICY.
>
> Insurance under this policy does not apply to any liability arising out of the rendering of or failure to render professional services in the conduct of **your** business or profession.

(Booth Aff., Ex. B policy page CX 05 00 07 93 (bold in original).)

The Business policy excludes coverage for punitive damage awards expressly, stating that:

> p. PUNITIVE DAMAGES. **We** will not pay for punitive or exemplary damages.

(Booth Aff., Ex. A, policy page 11 of 18 (emphasis in original).) The Excess policy also excludes coverage for punitive damages. The policy endorsement states:

7

> This endorsement modifies insurance provided under the COMMERCIAL BLANKET EXCESS LIABILITY POLICY.
>
> Insurance under this policy does not apply to punitive or exemplary damages awarded against the **insured**.

(Booth Aff., Ex. B, policy page CX 05 04 07 93 (emphasis in original.)

The Business policy obligates American Family to defend suits against its insured. However, the Business policy obligates American Family to defend only against claims seeking damages to which the insurance policy applies. The Business policy states:

> 1. **Insuring Agreement. We** will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. **We** will have the right and duty to defend any suit seeking those damages.

(Booth Aff., Ex. A, policy page 9 of 18 (emphasis in original).) The Excess policy includes a similar exception, which states:

> **We** have a duty to defend any **claims** or **suits** to which this insurance applies but which are not covered by any **underlying insurance** shown in the Declarations.

(Booth Aff., Ex. B, policy page 1 of 10 (emphasis in original).)

As stated above, the amended complaint contends that EDS conducted drug and alcohol tests administered on July 26, 2003, in a negligent manner. (First Am. Compl. ¶ 48.) The complaint sets out a list of the allegedly negligent conduct or omissions on the part of EDS that caused Balistrieri's damages. It states that EDS:

> I. Failed to monitor plaintiff or designate someone to monitor him during the waiting period;
> ii. Failed to begin the collection procedure until approximately 10:30 plaintiff [sic] was first given a specimen container. Instead, Ms. King started the waiting period at 8:10 a.m. and ending it at 11:10 a.m. when the waiting period should have expired at 1:30 p.m.;

8

>    iii. Continually pressured the plaintiff to urinate by 11:10 a.m. or
>    he would fail;
>    iv. Failed to give him any advice concerning drinking fluids;
>    v. Being physically present in the collection room with the plaintiff
>    each time plaintiff attempted to provide urine specimen;
>    vi. Allowing a collector of opposite gender to be present at the
>    collection site;
>    vii. Allowing plaintiff's supervisor to enter the restroom and have
>    a discussion with the plaintiff while the plaintiff was attempting to
>    provide a urine specimen.

(First Am. Compl. ¶ 49.) The damages Balistrieri claims to have sustained include lost income, severe emotional distress, physical illness, humiliation over the ability to support himself, disruption of his personal life and harm to his employment reputation. (First Am. Compl. ¶ 50.) The complaint asks for actual, consequential and punitive damages. (First Am. Compl. page 10.)

## Discussion

American Family submits that there are multiple grounds upon which the court can rely in granting its motion for summary judgment. First, it argues that there are several provisions in EDS's Business and Excess policies that exclude coverage for the conduct underpinning Balistrieri's claims. Second, the motion maintains that even if the court finds that the exclusions are not applicable, the conduct complained of does not constitute an "occurrence" as defined by the policies, and, therefore, any damages sustained by Balistrieri cannot have arisen from an occurrence as required by the policies. Third, American Family asserts that the claim for punitive damages is excluded from coverage under both policies. Finally, it contends that if there is no coverage under the policies, it has no duty to defend its insured in this action.

9

Under Wisconsin law, courts interpret insurance contracts according to the language of the documents, i.e., the terms and conditions contained in the policies. *See Ehlers v. Johnson*, 164 Wis.2d 560, 563, 476 N.W.2d 291, 293 (Wis. App. Ct. 1991), *Budget Rent-A-Car Sys. Inc. v. Shelby Ins. Group*, 197 Wis.2d 663, 669, 541 N.W.2d 178, 180 (Wis. Ct. App. 1995). When these terms and conditions are unambiguous, courts will not engage in construction, but will merely apply the policies' terms and conditions to the facts of the case. *See Ehlers*, 164 Wis.2d at 563; *see also Budget Rent-A-Car*, 197 Wis.2d at 669. Words and phrases are ambiguous when they are susceptible to more than one meaning. *See Ehlers*, 164 Wis.2d at 563. In interpreting insurance contracts, courts give words or terms their common and ordinary meaning as perceived by lay persons. *See Trumpeter Developments, LLC v. Pierce County*, 2004 WI App. 107, ¶ 11, 272 Wis.2d 829, ¶ 11, 681 N.W.2d 269, ¶ 11(Wis. Ct. App. 2004).

Insurance policies are interpreted as they would be understood by a reasonable person in the insured's position. *See Vogel v. Russo*, 2000 WI 85, ¶ 14, 236 Wis.2d 504, ¶ 14, 613 N.W.2d 177, ¶ 14 (Wis. 2000) and *Novak v. Am. Family Mut. Ins. Co.*, 183 Wis.2d 133, 136, 515 N.W.2d 504, 505-06 (Wis. Ct. App. 1994). Courts attempt to discern and give effect to the parties' intent as revealed by policy language. *See Vogel*, 236 Wis.2d at 510, ¶ 14; *see also Everson v. Lorenz*, 2005 WI 51, ¶ 14, 280 Wis.2d 1, ¶ 14, 695 N.W.2d 298, ¶ 14 (Wis. 2005). On the other hand, courts will not interpret an insurance policy to provide coverage for risks not contemplated or underwritten and for which the insured did not pay a premium. *See Vogel*, 236 Wis.2d at 511, ¶ 14 and *Everson*, 280 Wis.2d at 11, ¶ 14.

"In an insurance policy, an exclusion is a provision which eliminates coverages where, were it not for the exclusion, coverage would have existed." *Bortz v. Merrimac Mut.*

10

*Ins. Co.*, 92 Wis.2d 865, 871, 286 N.W.2d 16, 19 (Wis. Ct. App. 1979). Stated differently, "exclusions define coverage limitations or expressly refuse to assume a specific hazard or risk." *Id.* Further, "since there never was an assumption of risk, there can be no liability under the policy although the policy remains in force in respect to the risks assumed. *Id.* at 871-72.

When determining whether an exclusion applies, courts must look at the conduct or incident giving rise to the claim, not the theory of liability. *See Trumpeter*, 272 Wis.2d at 834, ¶ 8. "The phrase 'arising out of' in an insurance policy is very broad, general and comprehensive and is ordinarily understood to mean originating from, growing out of, or flowing from. When 'arising out of' is used in an exclusion, all that is necessary is some casual relationship between the injury and the event not covered." *Trumpeter*, 272 Wis.2d at 834, ¶ 9 (citation omitted).

"To determine whether a duty to defend exists, the complaint claiming damages must be compared to the insurance policy and a determination made as to whether, if the allegations are proved, the insurer would be required to pay the resulting judgment." *Trumpeter*, 272 Wis.2d at 833, ¶ 7 (quoting *School Dist. v. Wausau Ins. Cos.*, 170 Wis.2d 347, 364-65, 488 N.W.2d 82 (1992)); *see also Everson*, 280 Wis.2d at 9, ¶ 11. The Wisconsin Court of Appeals has stated that "[t]he duty to defend is a creature of contract. No Wisconsin statute prescribes a duty to defend or restricts its contractual limitation." *Novak*, 183 Wis.2d 133, 137.

In the case at bar, the policy language is unambiguous. Hence, the court will give the terms their ordinary meaning and apply them to the facts of this case. There are two exclusions which, if applicable, would deny EDS coverage under the policies for the claims

made by Balistrieri. The first is the employment practices exclusion, which excludes coverage for any damages that an insured may be liable to pay as an employer or *in any other capacity* arising from the termination of employment, humiliation or consequential injury as a result of termination. The second is the professional liability exclusion, which excludes coverage for damages arising from the rendition of professional services by any insured who is a medical technician, health care practitioner of any kind or a consultant.

The applicability of these exclusions depends not on the theory of liability, i.e., negligence, but on the events that gave rise to the allegation of negligence by EDS. In other words, the applicability of the exclusions depends on how the court views the precipitating event underlying the claim. The precipitating event can be seen as either Balistrieri's termination or EDS's conduct during the drug test. If the precipitating event is the termination, then the employment practices exclusion may apply if EDS can be found liable as Balistrieri's employer or as an agent of UPR or in any other capacity.

There is no disputing that EDS never employed Balistrieri, therefore, American Family argues that EDS was acting as UPR's agent. If EDS was acting as UPR's agent, it would be acting in a capacity which would make the employment practices exclusion applicable. However, American Family does not provide the court with any evidence of an agency relationship between EDS and UPR. At best, the court could conclude that EDS was UPR's independent contractor. Because this is a capacity pursuant to which EDS could be held liable, the employment practices exclusion could apply.

However, to come to this conclusion the court would have to view the precipitating event as the termination. But the facts do not support this conclusion. As mentioned above, the Wisconsin Court of Appeals stated that courts must look to the incident

12

giving rise to the claim. Viewed in this light, the precipitating event clearly is EDS's conduct during the test.

Therefore, the court will consider whether the professional liability exclusion applies. Balistrieri claims that his injuries arose from EDS's negligent administration of the drug test because the negligence resulted in his failing the test and this failure resulted in his termination. (First Am. Compl. ¶¶ 48-50.) Although American Family does not provide evidence as to the qualifications of the test administrator, Ms King, the court finds that she can be considered, at the very least, a consultant. The professional liability exclusion provides no coverage for damages resulting from the rendition or failure to render professional services by consultants.

Furthermore, the Excess policy's exclusion states clearly that the "policy does not apply to any liability arising from the rendering of or failure to render professional services in the conduct of your business or profession." (Booth Aff., Ex. B, policy page CX 05 00 07 93.) Inasmuch as EDS is in the business of administering drug and alcohol tests and the claims arise from EDS conduct while rendering services of that business, the professional liability exclusion clearly applies. Thus, the court finds that the Business and Excess policies exclude coverage for the damages claimed by Balistrieri in this case.[2]

Finally, as stated above, the duty to defend is determined by whether coverage exists for the damages complained of in the lawsuit. *See Everson*, 208 Wis.2d at 9, ¶ 11. Because American Family's policies provide no coverage for the damages claimed by Balistrieri, it must also conclude that American Family has no duty to defend EDS. As a

---

[2] Because the court finds that no coverage under the policies based on the professional liability exclusion, it will not address American Family's arguments based on the lack of an occurrence or the punitive damage exclusion.

13

consequence, there is no reason for American Family's continued participation as litigant in this case. Thus,

IT IS ORDERED that the motion for summary judgment dismissal of American Family Mutual Insurance Company is GRANTED.

IT IS FURTHER ORDERED that intervenor, American Family Mutual Insurance Company, is DISMISSED from this case.

Dated at Milwaukee, Wisconsin, this 31st day of August, 2007.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE